# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN CROSBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:11-cr-00023-GZS |
| | ) | 2:14-cv-00013-GZS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner John Crosby, pursuant to 28 U.S.C. § 2255, seeks to vacate, set aside, or correct his sentence. (Motion, ECF Nos. 69, 69-1, 72.)[1] In August 2011, following a guilty plea, Petitioner was convicted of two counts of making interstate threatening communications to injure a person and one count of possession of a firearm as a felon. (Judgment, ECF No. 53 at 1.) The Court sentenced Petitioner to 46 months on each of the counts, to be served concurrently, followed by three years of supervised release.[2] (*Id.* at 2-3.)

Petitioner appealed citing ineffective assistance of counsel. The First Circuit dismissed the appeal "without prejudice to his pursuing the ineffective-assistance claim through a petition filed in the district court under 28 U.S.C. § 2255," noting that the Court expressed no opinion as to the

---

[1] Petitioner filed a form motion, pursuant to 28 U.S.C. §2255. (ECF No. 69.) He filed an addendum with the motion. (ECF No. 69-1.) Shortly thereafter, and before the Government filed its answer, Petitioner filed a supplement to his motion. (ECF No. 72.) In this recommended decision, all three of these filings are referred to as Petitioner's section 2255 motion. Because most of Petitioner's claims are set forth in ECF No. 69-1, references to "motion" are to that filing unless otherwise indicated. ECF Nos. 69-1 and 72 are not signed under penalty of perjury, but that issue is moot if the Court dismisses the motion.

[2] It appears, based on a change of address form that Petitioner sent to the Court, that he may have completed his prison term and that he currently may be on supervised release. (Letter, ECF No. 107.) A petitioner who is serving a term of supervised release is "in custody" for purposes of section 2255. *See Parkin v. United States*, 565 F. App'x. 149, 151 & n.2 (3d Cir. 2014) (per curiam).

merits of a claim of ineffective assistance of counsel. *United States v. Crosby*, 482 F. App'x 600, 600-01 (1st Cir. 2012) (per curiam).

In the pending section 2255 motion, Petitioner claims ineffective assistance of trial and appellate counsel on a number of grounds. He asserts that he signed the motion on January 3, 2014. (Motion, ECF No. 69 at 6.) The motion was filed on January 13, 2014; the Government does not challenge the timeliness of Petitioner's motion. (Response, ECF No. 89 at 1 n.2.)

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On January 17, 2011, and on January 23, 2011, Petitioner made threatening interstate communications, in violation of 18 U.S.C. § 875(c). (Prosecution Version, ECF No. 37 at 1.) The first communication was sent via a "contact us" function on a web site and was traced to an internet protocol address associated with a commercial location. (*Id.*) Surveillance video from that location showed that someone appearing to be Petitioner was present at the same time that the threatening communication was sent. (*Id.* at 1-2.) The second communication was sent in the same manner, but was traced to an internet protocol address that was associated with the University of Southern Maine and registered to Petitioner. (*Id.* at 2.) These two communications were death threats and ethnic slurs directed at two individuals who were affiliated with a media organization. (*Id.* at 1-2.) The threats were part of a pattern of more than twenty generalized threats directed at the organization and traced to the university internet protocol address registered to Petitioner. (*Id.* at 2.)

On January 26, special agents at the Federal Bureau of Investigation (FBI) arrested Petitioner after they located him while he was logged onto his laptop computer in the library at the

---

[3] The following facts are derived largely from the prosecution version, which version Petitioner, in his change of plea hearing, stated was true, to his personal knowledge. (Plea Transcript, ECF No. 58 at 8-10.)

University of Southern Maine. (*Id.* at 2.) Petitioner's laptop was seized without a warrant at the time of the arrest. (*Id.*)

Petitioner maintains that when he was arrested, he told law enforcement that the keys found on his person went to his car, which was parked in a metered parking space outside the library. (Motion at 3.) Petitioner asserts that he asked the agent who drove him from where he was arrested to the FBI office whether he would be allowed to call a friend or relative to move his car, and the agent told him, "we can take care of that later." (Reply, ECF No. 105 at 14.) On January 27, without a warrant, law enforcement seized Petitioner's car from the metered parking lot outside the library. (Motion at 3; *In re 1996 Volvo Station Wagon*, 2:11-mj-00019-JHR, ECF No. 1-2 at 4.) On January 28, 2011, law enforcement obtained a warrant to search Petitioner's laptop, but the search of the laptop was not conducted until February 9, 2011. (Motion at 3-4.)[4]

On February 1, law enforcement obtained a warrant to search Petitioner's car. (*1996 Volvo Station Wagon*, ECF No. 1-1.) The affidavit in support of the application for a search warrant alleged probable cause to believe that evidence of the crime of transmitting threatening communications in interstate commerce would be found in the car. (*1996 Volvo Station Wagon*, ECF No. 1-2 at 2.) The affiant did not assert that agents had conducted an inventory search or that they had already found a shotgun in the car. Rather, the affiant alleged that during a search of Petitioner's messenger bag incident to his arrest on January 26, law enforcement found a key ring with a Volvo key fob. (*Id.* at 3.)

---

[4] The chronology of the searches of Petitioner's car and laptop computer is provided because Petitioner argues that the order in which the warrants were obtained and the searches were conducted demonstrates bad faith by law enforcement, and counsel should have moved on that basis to suppress a shotgun found in his car. (Motion at 2-7.) The Government does not contest the dates in its response, but argues that it was not obligated to conduct the searches in any particular order. (Response, ECF No. 89 at 6.)

According to law enforcement, Petitioner told law enforcement that his car was in metered parking outside the library, and he gave them a description of his car. (*Id.* at 3-4.) Agents looked through the car windows and saw that the back seat was set up like a bed and there were curtains attached to the back windows. (*Id.* at 4.) Agents observed a toothbrush and toothpaste in Petitioner's messenger bag, and based on the appearance of the car and the messenger bag, concluded that Petitioner might be living in his car. (*Id.*)

Law enforcement learned from the Maine Bureau of Motor Vehicles database that the parked car was registered to Petitioner. (*Id.*) The affiant, an FBI Special Agent, asserted that "it is common practice for individuals involved in criminal activity such as that described [in the affidavit] to maintain records of their activities, including internet searches; journals; letters; photographs; and both paper and electronic copies of their threatening communications, as momentos of their accomplishments." (*Id.* at 4-5.) The agent further asserted that the items are often concealed in homes, and because Petitioner apparently was using his car as his home, he likely had the items in his car. (*Id.* at 5.)

On February 4, law enforcement conducted a warrant search of the car. (Prosecution Version at 3.) Agents found a shotgun that was manufactured in Massachusetts and, therefore, determined that the shotgun had traveled in interstate commerce prior to Petitioner's possession of it in Maine. [5] (*Id.*) Law enforcement conducted a warrant search of Petitioner's laptop on February 9, and found evidence of the threatening communications. [6] (Motion at 3-4; Prosecution Version at 3.)

---

[5] Petitioner knowingly possessed the firearm, as defined in 18 U.S.C. § 921(a)(3), after he had been convicted of two crimes punishable by prison terms of more than one year: (1) robbery, No. CR01-1326 (Jan. 24, 2002); and (2) unlawful possession of heroin, No. CR97-1022 (June 2, 1998). (Prosecution Version, ECF No. 37 at 3.)

[6] The communications sent from the laptop traveled interstate from Maine via a server in the state of Washington, to the organization's servers in Washington, D.C. (Prosecution Version at 3.)

Petitioner was indicted on February 24, 2011. (Indictment, ECF No. 12.)[7] Petitioner pled guilty to all three charges on April 15, 2011. (Plea Tr., ECF No. 58 at 4, 8.) In response to questioning by the Court, Petitioner said that he had sufficient time to discuss the charges with counsel, and that counsel had explained the Government's burden of proof and the possible penalties. (*Id.* at 4-5.)[8] Petitioner also acknowledged that he understood that he was giving up his right to a trial by jury and the rights attendant to that right, as well as his right to an appeal. (*Id.* at 6-8.)

During his plea hearing, Petitioner represented that he had received and reviewed the prosecution version with counsel, that he understood it, and that to his personal knowledge, the version was true. (*Id.* at 8-10.) The Court then found a factual basis for each of the guilty pleas in the case. (*Id.* at 10.)

Upon further questioning, Petitioner stated that he had not been threatened or forced to plead guilty. (*Id.*) Petitioner also asserted that he understood (a) that the Court did not have to accept the sentencing recommendations of his counsel or the Government, (b) that regardless of whether the recommendations were adopted, Petitioner would not be permitted to withdraw his guilty pleas, and (c) that the Court could impose a sentence that was more severe than the sentencing guidelines range. (*Id.* at 10-12.) The Court asked Petitioner if anyone had made any promises to him in return for his guilty plea. (*Id.* at 12.) When the Court noted that Petitioner hesitated and asked what Petitioner had heard, Petitioner responded:

---

[7] Although the indictment set forth, incorrectly, that the charged crimes took place in 2010, the Prosecution Version sets forth the corrected year of 2011. (Indictment, ECF No. 12 at 1-2; Prosecution Version at 1-3.) The Government represents that defense counsel consented to a correction on the basis that this was a clerical error. (Government's Appellate Brief, ECF No. 89-1 at 16 n.2.)

[8] Petitioner specifically stated that he understood that the penalty may be up to five years of imprisonment on counts one and two, up to ten years of imprisonment on count three, up to three years of supervised release, and up to two additional years of imprisonment for a violation of supervised release. (*Id.* at 5-6.)

Just from people in jail that say that – someone told me yesterday that if I didn't waive my indictment that the sentencing can be more harsh, that if I don't cooperate that things can be more harsh, things like that. But that's not why I'm doing it. I'm just saying that in – you know, I've had to process that in my conscious mind and I've taken it under advisement, but I'm [pleading] here under full knowledge of the rule – the rule and Rule 11.

(*Id.* at 13.) The Court then told Petitioner:

I want you to understand that, regardless of what anyone tells you in jail, I'm going to sentence you without any thought to any of those communications that were made. My sentencing is completely independent of that. Do you understand that?

(*Id.*) Petitioner replied that he understood. (*Id.*) The Court accepted the plea based on (a) Petitioner's acknowledgement that he was guilty as charged, (b) that there was a factual basis for the plea, (c) that Petitioner was competent to plead guilty, (d) that Petitioner understood his rights and the maximum possible punishment, and (e) that Petitioner entered the pleas knowingly and voluntarily. (*Id.* at 14.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). Here, given that Petitioner alleges ineffective assistance of counsel, and given that Petitioner's right to counsel is guaranteed by the Sixth Amendment, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir.

1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). A petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). As for the "cause" test, the court must be "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'" *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

**B.       Claims Concerning Trial Counsel's Performance**

*1.   Failure to move to suppress evidence obtained in search of Petitioner's car*

Petitioner argues that (1) the seizure of the car was not for a valid community caretaking purpose, (2) law enforcement acted in bad faith in obtaining the search warrant for the car, and (3) counsel was ineffective in failing to move to suppress the shotgun found in the car.  (Motion at 5-7; Reply, ECF No. 105 at 18.)   Petitioner alleges that law enforcement likely conducted a warrantless inventory search when it seized the car, and found the gun during the warrantless search.  He alleges that law enforcement used the later warrant search of the car for threatening communications as a pretext to document, inaccurately and in bad faith, that the shotgun was discovered during a warrant-based search.   (Motion at 7.)   Petitioner contends that law enforcement's subsequent failure to search the computer data storage devices found in the car on the warrant search is evidence that the ostensible purpose of the search was pretextual.  (*Id.* at 5, 7.)  Petitioner further argues that if law enforcement had searched the laptop before seeking a warrant to search the car, the search of the car would have been unnecessary, because the laptop contained evidence sufficient to convict Petitioner of the charges of threatening communications. (*Id.* at 4-5.)  Finally, Petitioner maintains that because law enforcement recognized that he was living in his car, as evidenced by the curtains hung in the car, he had a higher expectation of privacy than do those who do not live in their vehicles.  (Reply at 18-19.)

Petitioner alleges that counsel was ineffective for failing to examine the search warrant affidavit and for failing to move to suppress the shotgun.  (*Id.* at 6-7.)  Petitioner contends that he was prejudiced because if he had known that the shotgun was inadmissible, he would not have pled guilty to the felon-in-possession charge, he would not have been convicted of that charge, and

his guidelines sentencing range would have been 24 to 30 months rather than the 37 to 46 months that the Court found at sentencing.  (*Id.* at 8-9.)

The warrantless seizure of the car from the university parking lot did not violate Petitioner's Fourth Amendment rights.  *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) ("Police  . . . frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."); *Cardwell v. Lewis*, 417 U.S. 583, 594 (1974) (holding that seizure from a public parking lot was not meaningfully different from seizure from a highway); *United States v. Coccia*, 446 F.3d 233, 238 (1st Cir. 2006) (recognizing that "the community caretaking function encompasses law enforcement's authority to remove vehicles that impede traffic or threaten public safety and convenience").  Although Petitioner alleges that he asked about whether he could arrange for a friend or relative pick up his car, he does not allege that law enforcement officials gave him permission to make his own arrangements for the car.  "[L]aw enforcement officials are not required to give arrestees the opportunity to make arrangements for their vehicles when deciding whether impoundment is appropriate." *Vega-Encarnación v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003) (citing *Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987)).  Law enforcement is "required to have a non-investigatory reason for seizing an arrestee's car," but when "there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car." *Id.* (emphasis omitted).  The seizure of the car did not violate the Fourth Amendment.

Assuming that law enforcement found the shotgun during a warrantless inventory search, as Petitioner alleges, such a search would not have violated the protection afforded by the Fourth

Amendment.  *See United States v. Scott*, 270 F.3d 30, 40 (1st Cir. 2001) (holding that if an arrest is valid, law enforcement may impound a car incident to the arrest and may conduct an inventory search without a warrant and without probable cause).  "A search or seizure undertaken pursuant to the community caretaking exception is not infirm merely because it may also have been motivated by a desire to investigate crime." *Coccia*, 446 F.3d at 240-41; *see also United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005) (recognizing that an individual has a "diminished expectation of privacy" in an automobile for purposes of an inventory search).  "As long as impoundment pursuant to the community caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the seizure." *Coccia*, 446 F.3d at 241 (quoting *Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991)).  Thus, even if Petitioner could prove that law enforcement found the gun during a warrantless inventory search, that search would not violate Petitioner's Fourth Amendment rights.

In addition, even if Petitioner could prove that law enforcement deliberately omitted mention of the shotgun in its affidavit in support of a warrant to search the car, the warrant search did not violate Petitioner's Fourth Amendment rights.  A defendant who alleges a deliberate or reckless material omission in an affidavit in support of a search warrant may have a right to an evidentiary hearing.  *See United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).  "However, to get a *Franks* hearing, a party must first make two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause." *Id.* at 173.  "With an omission, the inquiry is whether its inclusion in an affidavit would have led to a *negative* finding by the magistrate on probable cause." *Id.* at 173 n. 5.  When a defendant fails to meet the second

requirement, the Court need not address the first. *Id.* at 173. Here, Petitioner cannot show that the inclusion of a reference to the shotgun in the affidavit would have led to a negative finding of probable cause of evidence of threatening communications. Petitioner, therefore, would not have been entitled to a *Franks* hearing, and, consequently, counsel was not ineffective for failing to file a motion to suppress the shotgun.

Petitioner also challenges the statements in the search warrant affidavit that "it is common practice for individuals involved in criminal activity such as [threatening communications] to maintain records of their activities . . . as [momentos] of their accomplishments" and that "because Crosby appears to be living in his car, it is likely that he has concealed such items in his car." (Reply at 20-21; *1996 Volvo Station Wagon*, ECF No. 1-2 at 4-5.) Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion) (citation omitted). The officer's attestation that his knowledge was based on experience and training is "unquestionably relevant to the existence of probable cause." *United States v. Robinson*, 275 F.3d 371, 381 (4th Cir. 2001) (holding that the officer's personal experience was relevant to probable cause). The facts asserted in the officer's affidavit are sufficient to establish probable cause that evidence of the crime might be found in Petitioner's car. Counsel was not deficient for failing to file a motion to suppress for lack of probable cause.

Petitioner asserts that the chain of custody was broken with respect to his car, and that counsel never discussed this issue with him. (Motion at 5, 7.) "A possible defect in the chain of custody for a certain piece of evidence factors into the weight given to the evidence rather than its

admissibility." *United States v. Scharon*, 187 F.3d 17, 22 (1st Cir. 1999). Petitioner's argument thus would not result in the suppression of the evidence of the shotgun.

When a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail," and the Court need not determine whether the petitioner has demonstrated "'cause and actual prejudice.'" *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)).[9] Petitioner, therefore, cannot prevail on his claim that his trial counsel was ineffective for failing to move for the suppression of the shotgun.

### 2. Brady *violations*

Petitioner argues that counsel failed to discuss with him the possibility of arguing that the prosecution committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide Petitioner with the allegedly misleading search warrant affidavit.[10] (Motion at 8.) Assuming that Petitioner could prove that the Government suppressed that it found the shotgun on a warrantless inventory search, no prejudice occurred because the evidence would not have resulted in the suppression of the shotgun.

---

[9] If an assessment of actual prejudice was required, the record establishes that Petitioner was not prejudiced by counsel's decision not to seek suppression of the shotgun. First, the three-point reduction in offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, would not have been available to Petitioner, and thus his sentencing range would have increased. Second, the shotgun would have been considered at sentencing. *See United States v. Acosta*, 303 F.3d 78, 86 (1st Cir. 2002) (holding that a sentencing court may consider evidence that the defendant has successfully suppressed). Third, the Court noted that initially it considered a sentence within the sentencing guidelines range to be inadequate. (Sentencing Tr. at 47.) If the firearms charge had been dismissed based on the suppression motion, the Court may have imposed a sentence above the guidelines range on the other counts. Fourth, the 46-month sentence that the Court imposed on each of the counts, to be served concurrently, could have been imposed even in the absence of a conviction on the firearms charge. *See* 18 U.S.C. § 875(c) (imposing a five-year maximum sentence on the charge of threatening communications).

[10] The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The First Circuit has held that "[t]o establish a *Brady* violation, 'a defendant must make three showings. The evidence at issue (whether exculpatory or impeaching) must be favorable to the accused; that evidence must have been either willfully or inadvertently suppressed by the government; and prejudice must have ensued.'" *United States v. Alverio–Meléndez,* 640 F.3d 412, 424 (1st Cir.2011) (quoting *United States v. Mathur,* 624 F.3d 498, 503 (1st Cir.2010)) (quotation marks omitted).

"Impeachment evidence must be material before its suppression justifies a new trial." *United States v. Paladin*, 748 F.3d 438, 444 (1st Cir. 2014) (quotation marks omitted). "Evidence is material when a 'reasonable probability [exists] that the result of the trial would have been different' if the suppressed evidence had been disclosed." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (quotation marks omitted)). Here, there is no reasonable probability that the result would have been different had the Government disclosed that it found the shotgun on a warrantless inventory search, as Petitioner alleges, because the shotgun would have been admissible in any event. *Id.*

### 3. *Failure to seek psychological evaluation*

Petitioner alleges that counsel was ineffective when he failed to seek a psychological evaluation of Petitioner. (Motion at 9-10.) Although Petitioner argues that he might have received a downward departure, he acknowledges that this was not likely. (*Id.*; Reply at 27.)[11] (Reply at 27.) Petitioner also contends that his guilty plea was without knowledge because he did not have a psychological evaluation. (Motion at 10.)

---

[11] Petitioner argues that if counsel had filed a motion to sever the felon-in-possession charge from the charges of threatening, Petitioner's sentencing on the felon-in-possession charge would not have involved a serious threat, and he might have obtained a downward departure under U.S.S.G. § 5K2.13, which states in pertinent part:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; [or] (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

Petitioner's claim of ineffective assistance of counsel for failure to file a motion for misjoinder or for severance is addressed below.

"A guilty plea is valid as long as the decision was based on 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). The First Circuit has held that "[c]ompetence to enter a guilty plea is determined by the same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality." *United States v. Morrisette*, 429 F.3d 318, 322 (1st Cir. 2005). A "petitioner must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to 'overcome the presumption of regularity which the record . . . imports.'" *Ouellette v. United States*, 862 F.2d 371, 374 (1st Cir. 1988) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

At Petitioner's plea hearing, after a comprehensive inquiry, the Court learned that Petitioner had a bachelor's degree, that he was not currently seeing a physician or mental health worker, that the only medication he was taking was ibuprofen, that he had not used any drugs or alcohol in the last 24 hours, and that he understood why he was in court (Plea Tr., ECF No. 58 at 2-3). The Court found that Petitioner was competent to enter a plea. At sentencing, after a similar colloquy, the Court found that Petitioner was competent to be sentenced. (Sentencing Tr., ECF No. 60 at 2-3.) Petitioner presents no evidence to overcome the presumption that his statements to the Court at the plea hearing were valid.

### 4. *Promises regarding residential drug program*

Petitioner argues that counsel was ineffective when he advised Petitioner that he was eligible for a 500-hour residential drug abuse program, when in fact Petitioner was not eligible due to a prior violent crime and a drug charge. (Motion at 11.) As a result, Petitioner was not able to

get a sentence reduction, in spite of counsel's advice to the contrary. (*Id.*) Petitioner alleges that a probation officer provided the same incorrect advice. (*Id.*)

Petitioner cannot demonstrate prejudice, even if counsel misinformed him as to whether he was eligible for the residential drug abuse program. *See Howard v. United States*, Nos. 2:05-cr-00013-DBH, 2:09-cv-00221-DBH, 2009 WL 3460722, *6, 2009 U.S. Dist. Lexis 130199, *16-17 (D. Me. Oct. 20, 2009) (recommended decision) (adopted Nov. 20, 2009) (suggesting that mistaken advice from counsel may not be cognizable as a Sixth Amendment claim because the residential drug abuse program is discretionary for the judge to recommend and discretionary for the Bureau of Prisons to provide). Indeed, the Tenth Circuit has held that because a petitioner told the Court that no one had made any promises or guarantees about his sentence, he failed to demonstrate prejudice as a result of his mistaken belief that he would be eligible for a one-year sentence reduction for completion of the residential drug abuse program. *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("We have held that an erroneous sentencing prediction is not prejudicial where the court has conducted an adequate Rule 11 colloquy."). In *Viera*, the Court noted that the petitioner had acknowledged that "counsel's predictions relating to sentencing could be wrong." *Id.* at 1220.

Here, while the Court did not specifically warn Petitioner that counsel's predictions could be incorrect, the Court made very clear that the Court could impose a more severe sentence than the advisory range, and that if the Court did so, Petitioner would not be permitted to withdraw his guilty plea. (Plea Tr. at 11-12.) The Court then asked Petitioner whether any promises had been made to him as to the sentence, and Petitioner replied that none had. (*Id.* at 13.) In short, on this record, Petitioner cannot establish prejudice even if one assumes that Petitioner's counsel provided inaccurate information.

### 5.  *Lack of test firing of the firearm*

Although Petitioner admitted that to his personal knowledge, the prosecution version, which asserted that the firearm meets the definition of "firearm" under 18 U.S.C. § 921(a)(3)[12] (Prosecution Version at 3), was accurate,  Petitioner alleges that counsel was deficient for failing to move to suppress the gun on the basis that it had not been test-fired.  (Motion at 13-14.) Petitioner alleges that the purpose of the test firing would have been to confirm that the gun functioned as a gun and was not a non-functioning replica of a gun.  (*Id.* at 13.)  He contends that he would not have pled guilty if he had known that the gun would be inadmissible.  (*Id.* at 14.)

Contrary to Petitioner's argument, the gun would not have been inadmissible even if the gun was inoperable; a firearm need not be operable to support a conviction under 18 U.S.C. § 922. *See United States v. Williams*, 577 F.3d 878, 882 (8th Cir. 2009) ("We have repeatedly rejected the contention that a firearm needs to be operable in order to support a conviction under 18 U.S.C. § 922.").  Simply stated, counsel's performance was not deficient based on his failure to request a test fire.

### 6.  *Failure to seek a plea agreement*

Petitioner argues that counsel was ineffective because he failed to seek a plea offer and because he failed to inform Petitioner about the possibility of seeking a plea offer.  (Motion at 14.) The Supreme Court has held that counsel has a duty to communicate to his or her client a formal plea offer from the prosecution.  *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).  However, "a defendant has no right to be offered a plea."  *Id.* at 1410.  "[C]ounsel does not have a general duty to initiate plea negotiations," and in this case, the record lacks any evidence to suggest that the

---

[12] Title 18 U.S.C. § 921(a)(3) states: "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

Government would have offered a plea bargain, particularly given the evidence against Petitioner on the firearms charge, which carried the longer sentence.  *See United States v. Pender*, 514 F. App'x 359, 361 (4th Cir. 2013) (holding that the petitioner's allegations "were sufficient to raise a material issue of fact as to whether [the petitioner's] attorney's actions were unreasonable in failing to pursue plea negotiations," and noting that the case was unique because the Government conceded that a plea bargain favorable to the petitioner would have been offered if counsel had pursued it).  Because Petitioner has not demonstrated that the Government would have proposed a more favorable sentence as part of a plea agreement, Petitioner has not and cannot establish that counsel's performance was substandard.

### 7. *Failure to move for recusal*

At sentencing, the Court increased the offense level by three points, pursuant to U.S.S.G. § 3A1.1(a), based on its finding of the facts as set forth in the presentence investigation report.[13] (Sentencing Tr. at 42-43.)   The presentence investigation report asserted that Petitioner's threatening communications included the "frequent use of ethnic slurs" and the use of a "derogatory term contained in the email address" directed to one of the victims.  The report stated that "it appears the defendant intentionally selected" one of the victims based on what he thought were her religious beliefs.  In finding that Petitioner used hate speech, the Court found beyond a reasonable doubt that Petitioner intentionally selected the victim based on his beliefs about her ethnicity or her religious beliefs.  (Sentencing Tr. at 43.)  Petitioner contends that counsel should have asked the judge to recuse himself rather than sentence Petitioner to a hate crime enhancement

---

[13] U.S.S.G. § 3A1.1(a) states:  "If the finder of fact at trial or, in the case of a plea of guilty or nolo <u>contendere</u>, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by **3** levels."

for slurs and threats against persons allegedly of the same religious or ethnic background as the judge. (Motion at 15.)

"The governing statute, 28 U.S.C. § 455(a), provides that a judge 'shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *In re Bulger*, 710 F.3d 42, 45 (1st Cir. 2013) (quoting 28 U.S.C. §455(a)). "On the other hand, under section 455, a judge is not compelled automatically to accept as true the allegations made by the party seeking recusal." *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997). In this case, Petitioner's claim is based solely on the Court's determination to increase the offense level for the hate crime. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Petitioner has failed to point to any evidence of bias. Petitioner thus has not demonstrated that counsel had a legitimate basis upon which to request recusal.

### 8. *Change of venue*

Petitioner argues that counsel was ineffective because he failed to request a change of venue. (Motion at 16.) He asserts that he would not have pled guilty if the venue had been changed to a location where potential jurors were not exposed to allegedly unfair media accounts of the charges against Petitioner. (*Id.* at 16-17.)

"A change of venue is proper if the court determines that there exists 'so great a prejudice against the defendant . . . in the transferring district that the defendant cannot obtain a fair and impartial trial there.'" *United States v. Misla-Aldarondo*, 478 F.3d 52, 58 (1st Cir. 2007) (quoting Fed. R. Crim. P. 21(a)). "In making this determination, we ask 1) whether the degree of inflammatory publicity had so saturated the community such as to make it virtually impossible to obtain an impartial jury, or 2) if prejudice cannot be presumed, whether nonetheless the empaneled

jury was actually prejudiced against the defendant." *Id.* (quotation marks and citation omitted). "Merely a high volume of media coverage is not sufficient to presume prejudice, if that coverage is factual, as opposed to inflammatory." *Id.* "A motion for change of venue is addressed to the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion." *United States v. Rodriguez-Cardona*, 924 F.2d 1148, 1158 (1st Cir. 1991) (quotation marks omitted).

Petitioner maintains that "there were countless television news segments and a front-page Portland Press Herald article, all painting Petitioner as a deranged psycho, authentically hell-bent on sexual assault of innocent women . . . ." (Reply at 35.) He concedes that "whether or not such a motion would have succeeded may be debatable," but he argues that counsel should have filed the motion nonetheless, and that when all of Petitioner's claims are considered cumulatively, counsel was constitutionally deficient. (*Id.* at 36-37.) Petitioner simply has not substantiated his allegations regarding inflammatory publicity. *See United States v. Pérez-González,* 445 F.3d 39, 46 (1st Cir. 2006) ("There is nothing in the record—no statements by jurors indicating animus, no examples of inflammatory newspaper articles or prejudicial news reports, and no evidence whatsoever of the pervasiveness or tone of the media coverage—to substantiate Pérez-González's argument.") (footnote omitted). Petitioner has not demonstrated that counsel was deficient for failing to file a motion for change of venue.

### 9. *Failure to agree to plead to an information*

Petitioner argues that counsel was ineffective because he failed to waive the indictment as Petitioner had agreed. (Motion at 17.) Petitioner contends that if he had agreed to waive the indictment, the Court would have recognized his cooperation and imposed a shorter sentence. (*Id.*)

Generally, the benefit for waiving indictment and pleading to an information is that the Government agrees to recommend a reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. *See United States v. Brown*, 169 F.3d 89, 91 (1st Cir. 1999); *United States v. Livesay*, 587 F.3d 1274, 1276-77 (11th Cir. 2009). The Government recommended and the Court granted Petitioner a three-point reduction for acceptance of responsibility. (Sentencing Tr. at 43.) The Court imposed a sentence "at the high-end of the guideline range" based on Petitioner's "despicable conduct and a risk of danger to the public," and the Court's conclusion that Petitioner committed "a very serious offense and one that indicates a potential for violence." (*Id.* at 47-48.) An agreement to waive the indictment would have had no mitigating effect on these sentencing factors, and, therefore, Petitioner's argument that the sentence likely would have been shorter had counsel sought to waive the indictment lacks merit.

### 10. *Malicious prosecution*

Petitioner claims prosecutorial misconduct, alleging that the FBI and prosecutor exaggerated Petitioner's threats to the media organization and failed to recognize that Petitioner was himself being harassed by the organization and by several federal agencies. (Motion at 18, 22-23.) He argues that because of this exaggeration and law enforcement's approach, law enforcement had no basis to search the car because there was no evidence of a connection between the car and the threatening messages. (Motion at 19.) Petitioner alleges that law enforcement permitted a bad faith affidavit to be filed in Court in support of the warrant to search the car (Motion at 22), and that his counsel failed to argue prosecutorial misconduct in an effort to exclude evidence of the shotgun (*Id.* at 26-27). In further support of the lack of a connection between the threatening messages and the shotgun, Petitioner maintains that he obtained the shotgun because he had suicidal thoughts, but that counsel failed to make that point. (Motion at 27.)

Petitioner's bad faith prosecution theory has been addressed in part above. In addition, Petitioner's allegations of malice are wholly conclusory and the prosecution version that he acknowledged was accurate supplied more than sufficient evidence to make the decision to charge objectively reasonable. Petitioner's malicious prosecution argument thus fails.

### 11. Selective and retaliatory prosecution

Petitioner contends that counsel failed to argue selective or retaliatory prosecution. (Motion at 28, 31; Reply at 53.) He asserts that others who are similarly situated have made threats but have not been prosecuted, and that he was selected for prosecution due to the social stature of the victims. (Motion at 28.) He argues that had counsel made the argument, the charges would have been dismissed. (*Id*. at 28-29.)

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. Our cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). A petitioner must demonstrate that he "has been singled out for prosecution when others similarly situated have not been prosecuted and that the prosecutor's reasons for doing so were impermissible." *See United States v. Magana*, 127 F.3d 1, 8 (1st Cir. 1997) (holding that "[t]he defendants did not make a sufficient prima facie showing of either discriminatory effect or discriminatory intent to justify the discovery they requested"). In *Magana*, the defendants relied on a newspaper article, a videotape of an interview, and an unsworn statement, to demonstrate discriminatory prosecution; the Court held that the evidence was insufficient, partly because it did not address the allegation "that there were similarly situated persons who were not prosecuted." *Id.*

"Vindictive prosecution occurs when the actions of the judge or prosecutor somehow punish a defendant for exercising constitutional or statutory rights during the prosecution." *United States v. Bassford*, 812 F.2d 16, 20 (1st Cir. 1987).  The First Circuit has held: "We presume that the prosecutor acted in good faith, and did not prosecute in a vindictive manner.  To rebut this presumption and obtain an evidentiary hearing on the issue, the defendant must allege facts (1) tending to show selective prosecution, and (2) raising a reasonable doubt about the propriety of the prosecution's motive." *United States v. Peterson*, 233 F.3d 101, 105 (1st Cir. 2000) (footnote omitted) (citing *Bassford*, 812 F.2d at 19).

As with his malicious prosecution claim, Petitioner's claim of selective prosecution is entirely conclusory.  Petitioner has made no showing of discriminatory effect, discriminatory or vindictive intent, or any other basis to support a claim of selective or vindictive prosecution. Accordingly, Petitioner's claim of ineffective assistance of counsel also lacks merit.  *See Tse*, 290 F.3d at 465.

### 12.  *Failure to seek dismissal of threats as jest*

Petitioner asserts that his threats were "made in jest" and that he "lacked subjective intent and was only making political statements."  (Motion at 32; Reply at 60.)  Petitioner contends that his intention should have been evident based on the "over-the-top" nature of the communications, which expressed "dark humor."  (Reply at 55.)  Petitioner alleges that the organization and the individual targets of his threats were aware that they were not in any true danger.  (Motion at 33.) Petitioner maintains that counsel failed to argue that the threats were not real.  (*Id.* at 34.)

"The law is crystal clear that threats are not constitutionally protected speech." *United States v. Walker*, 665 F.3d 212, 227 (1st Cir. 2011) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).  The threats at issue were to kill two individuals.  The record lacks any credible

support for Petitioner's suggestion that the Court would have been convinced to dismiss the charge based on Petitioner's argument that the threats were made in jest, or to support for the argument that the Court could have dismissed a grand jury indictment based on the Court's own determination of a factual question. "The indictment's allegations are assumed to be true, and 'courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations.'" *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) (quoting *United States v. Guerrier,* 669 F.3d 1, 3–4 (1st Cir. 2011)).

Counsel has a "right to ignore frivolous claims pressed by clients." *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991). Because Petitioner's argument would have been frivolous, his ineffective assistance claim is without merit.

### 13. Error in indictment

Petitioner argues that the indictment was fundamentally flawed because the dates alleged for the crimes were January 17 and 23, 2010, rather than January 17 and 23, 2011. (Motion at 36.) He contends that counsel was deficient because he failed to notice the error (*Id.*), and failed to object to the prosecution version. (Reply at 62.)

The parties and the Court addressed this issue at sentencing when the Government represented that the clerk had noticed the "typographical error in the indictment" and brought it to the Court's attention; defense counsel consented to the correction of the year alleged from 2010 to 2011, and the Government noted that the prosecution version stated the correct dates. (Sentencing Tr. at 41-42.)

The First Circuit has held: "[W]e have allowed ministerial corrections of clerical errors in names, dates, and citations, so long as the change would not deprive the defendant of notice of the charges against him." *United States v. Dowdell*, 595 F.3d 50, 68 (1st Cir. 2010). In this case, the

indictment was not "fundamentally flawed" as Petitioner contends; rather, it contained a typographical error. Petitioner was not deprived of notice of the charges. Counsel was not deficient for consenting to the correction, nor was Petitioner prejudiced.

As to the prosecution version, Petitioner told the Court that the prosecution version was true to the best of his knowledge, and the electronic signature of an Assistant United States Attorney appears on the document. (Plea Tr. at 8-10; Prosecution Version, ECF No. 37 at 4.) The prosecution version is not an indictment; rather, it is the Government's statement of the evidence it would introduce if the case were to proceed to trial. A defendant's admission that the prosecution version is true provides a means by which the Court may determine a factual basis for the plea. *See* Fed. R. Crim. P. 11(b)(3). (Plea Tr., ECF No. 58 at 10.)

## C. Claims Regarding Appellate Counsel's Performance

### 1. Issues selected for appeal

Petitioner argues that appellate counsel was ineffective because he failed to select legitimate issues from which to appeal. (Motion at 38, 51; Reply at 61.) "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).[14] Petitioner argues that appellate counsel failed to raise a number of issues. As discussed below, because none of these issues has merit, Petitioner's argument that appellate counsel's performance was deficient fails.

---

[14] In Petitioner's appeal, appellate counsel argued that trial counsel was ineffective because he failed to file a motion to suppress the shotgun. Counsel argued that although ineffective assistance claims may not typically be brought in a direct appeal, the record was sufficient in this case. (Appellate Brief, No. 11-1951.)

### 2. *Hate crime adjustment and conflict of interest*

Petitioner alleges that he was "purely motivated by political, social, and economic concerns," and, therefore, he did not commit a hate crime. (Motion at 41; Reply at 62.) He contends that he raised this point with appellate counsel, but counsel did not consider it. (Motion at 46.) Petitioner also alleges that his appellate attorney had a conflict of interest due to counsel's religious affiliation. (*Id.*)

The Court's findings of fact at sentencing are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *United States v. Savarese*, 686 F.3d 1, 15 (1st Cir. 2012). The Court found that the threatening communications were hate speech for purposes of U.S.S.G. § 3A1.1. (Sentencing Tr. at 43.) Petitioner has produced no evidence to support his contention that the sentencing court committed clear error in the factual findings, or a clear error of law in concluding that Petitioner used hate speech in the course of the threatening communications.

Petitioner's claim of a conflict of interest was raised and addressed during the course of the appellate process when Petitioner filed a motion for new counsel on appeal. The First Circuit denied the motion. (Order, No. 11-1951 (1st Cir. Nov. 17, 2011).) Given the First Circuit's rejection of the argument, and insofar as Petitioner has presented no new information to support his conflict of interest claim, Petitioner's argument must fail.

### 3. *Guilty plea*

At the plea hearing, the Court found that Petitioner was not coerced, and that he understood both the charges and the consequences of the plea. (Plea Tr. at 9-14.) Petitioner alleges that his plea was coerced, that he lacked knowledge of the consequences of pleading guilty, and that he suffered from malnutrition and overcrowded and violent jail conditions when he pled guilty.

(Motion at 47, 51.)  He argues that appellate counsel failed to raise the issue of a coerced and unknowing plea.  (*Id.*)

"Rule 11 addresses three 'core concerns': '1) absence of coercion; 2) understanding of the charges; and 3) knowledge of the consequences of the guilty plea."  *United States v. Kenney*, 756 F.3d 36, 45 (1st Cir. 2014) (quoting *United States v. Cotal-Crespo*, 47 F.3d 1, 4 (1st Cir. 1995)).  "'The burden is upon [Defendant], as the one attacking the plea, to show the circumstances justifying relief from the plea . . . .'"  *United States v. Varela-Rivera*, 551 F. App'x 583, 587 (1st Cir. 2014) (quoting *United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003)).  "Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea.  They are more likely to be reliable than later versions prompted by second thoughts, and guilty pleas−often in the defendant's interest−could hardly be managed any other way."  *Padilla-Galarza*, 351 F.3d at 598 (citation omitted).

Petitioner asserts that his plea was involuntary and coerced because the Court misled him regarding the consequences of his threatening communications.  The record establishes that the Court did not misrepresent the potential consequence of Petitioner's threatening communications.[15]  Indeed, given the nature of the chargers to which Petitioner pled guilty, the threatening communications that Petitioner made were appropriately considered by the Court.  (Plea Tr. at 13; Sentencing Tr., ECF No. 60 at 47.)  Petitioner's claim that his plea was involuntary thus lacks merit.

---

[15] Petitioner correctly notes that the Court stated at the plea hearing that it would sentence Petitioner independent of any communications that were made to Petitioner by other inmates.  (Motion at 47-48; Plea Tr., ECF No. 58 at 13.)  The record lacks any evidence to suggest that the Court considered the statements of other inmates.  The Court did not represent that it would not consider the Petitioner's threatening statements.

### 4. *Additional claims against appellate counsel*

Petitioner raises against appellate counsel several of the same claims that he asserted against trial counsel. (Motion at 51.) Because none of the underlying ineffective-assistance claims against trial counsel has merit, appellate counsel was not deficient for failing to raise those same claims. *See Jones*, 463 U.S. at 751-52. Furthermore, to the extent that Petitioner maintains that appellate counsel should have raised additional ineffective assistance issues on appeal, Petitioner's argument is without merit. As the First Circuit noted when it considered the sole ineffective assistance of counsel claim that Petitioner's appellate counsel raised on appeal, claims of ineffective assistance of counsel generally may not be brought in a direct appeal. *Crosby*, 482 F. App'x at 600.

### D. Addendum to Motion

In Petitioner's addendum (ECF No. 72) to his section 2255 motion, he asserts several additional ineffective assistance claims. To the extent that Petitioner attempts to raise additional stand-alone issues, Petitioner's unconditional guilty plea "waived all non-jurisdictional challenges to the resulting conviction . . . save claims that the plea was not knowing and voluntary." *United States v. González-Mercado*, 402 F.3d 294, 300 (1st Cir. 2005). Additionally, because Petitioner did not raise the stand-alone issues in his direct appeal, the claims are also procedurally defaulted. *See Damon v. United States*, 732 F.3d 1, 3-4 (1st Cir. 2013).

### 1. Miranda *claim*

Petitioner argues that trial counsel was ineffective because he failed to move to suppress statements Petitioner made after his arrest but before he was given his *Miranda* warnings.[16] (Motion, ECF No. 72 at 2.) Petitioner acknowledges that he was not prejudiced given that there

---

[16] *Miranda v. Arizona*, 384 U.S. 436 (1966).

was sufficient evidence on his laptop computer to convict him. (*Id.*) The Court need not analyze the issue further. *See Strickland*, 466 U.S. at 697. Petitioner's argument also fails because (1) the statements at issue were not included in the prosecution version and thus were not part of the factual basis for the plea; (2) if there had been error, it would have been harmless, given the evidence of the threatening communications and the shotgun. *See United States v. Carl*, 593 F.3d 115, 119 (1st Cir. 2010) (holding that the Court will not reverse a conviction for a Sixth Amendment violation if the error was harmless); (3) Petitioner volunteered the statements to law enforcement, *see United States v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008) ("A volunteered statement is not the product of interrogation and is not subject to suppression, even if warnings have not been provided."); and (4) according to the presentence investigation report, after Petitioner waived his *Miranda* rights, law enforcement interviewed him but then terminated the interview when Petitioner declined to provide further information.

### 2. Joinder and severance

Petitioner argues that trial counsel was ineffective because he failed to file a motion to sever the charge of possession of a firearm by a felon from the two charges of threatening, and because he failed to discuss the issue with Petitioner. (Motion, ECF No. 72 at 3.) He argues that he would have been acquitted on the charges of threatening if he had not been identified as a felon, and that the felon label would have been prejudicial at trial. (*Id.*)

Preliminarily, assuming, *arguendo*, that counsel did not discuss the possibility of severance with Petitioner, Petitioner has cited no persuasive evidence to suggest that he would have proceeded differently had his counsel addressed the issue. Indeed, given the strength of the Government's case on the threatening charges, Petitioner's suggestion that his decision to plead

guilty was based on the fact that the threatening charges were joined with the possession charge lacks credibility. Petitioner thus cannot establish prejudice.

In addition, Petitioner has not demonstrated that he would have prevailed had he challenged the joinder. Joinder of offenses is governed by Fed. R. Crim. P. 8(a), which states:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged−whether felonies or misdemeanors or both−are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Rule 8(a) "is 'generously construed in favor of joinder.'" *United States v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002) (quoting *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996)). The Court evaluates joinder under Rule 8 "in terms of how the government saw its case at the time of indictment." *Id.*

Here, a basis for the joinder existed because the indictment alleged that within a few days after communicating the threats alleged in Counts I and II, Petitioner illegally possessed a firearm, *i.e.*, a means by which to carry out a threat. *See United States v. Fenton*, 367 F.3d 14, 21 (1st Cir. 2004) (holding that joinder was proper where the indictment charged that a pipe bomb was used in furtherance of a drug-trafficking conspiracy). A misjoinder claim would likely have failed, and therefore, Petitioner's claim of ineffective assistance of counsel fails. *Tse*, 290 F.3d at 465.

"Counts that are properly joined need not always be tried together." *Fenton*, 367 F.3d at 21. Relief from prejudicial joinder is governed by Fed. R. Crim. P. 14(a), which states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." "Severance on the ground of undue prejudice is a judgment call and, thus, is a matter committed to the trier's informed discretion." *Fenton*, 367 F.3d at 22. The First Circuit has held that "[t]he bare mention of a prior

felony conviction otherwise unidentified" is "trivial" when it is "dwarfed . . . by the powerful separate evidence as to each charge." *United States v. Widi*, 684 F.3d 216, 222 (1st Cir. 2012). In this case, Petitioner has acknowledged that the evidence of threatening communications was sufficient to convict him on those charges. (Motion, ECF No. 72 at 2.) The evidence that Petitioner engaged in the conduct alleged was in fact significant. Petitioner thus cannot establish that he would have prevailed on a motion to sever and thus his ineffective assistance of counsel claim fails.[17]

Finally, to the extent that Petitioner maintains that he was prejudiced at sentencing by the joinder, Petitioner's argument is meritless. All of the charges could have been considered at sentencing regardless of the joinder. The statutory sentencing factors that the Court is to consider include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). "The district court has broad discretion to balance the pertinent sentencing factors, and the court is not required to give every factor equal weight." *United States v. Ledée*, 772 F.3d 21, 41 (1st Cir. 2014) (citation and footnote omitted). The sentencing factors include the occurrence of multiple offenses, whether those offenses are prosecuted separately or together, and the Supreme Court has held that "the commission of multiple offenses in the same course of conduct . . . necessarily provides important evidence that the character of the offender requires special punishment." *Witte v. United States*, 515 U.S. 389,

---

[17] Petitioner cites *United States v. Mildon*, No. 3:13-cr-00481, 2013 WL 2404080, 2013 U.S. Dist. Lexis, 77165 (W.D. Tex. May 31, 2013), in which the Court granted the defendant's motion to sever a felon-in-possession charge from a charge of transmitting a threatening communication. (Reply at 27.) In *Mildon*, the Court cited *United States v. Leemans*, No. 2:95-cr-00253, 1995 WL 569246, at *1 (E.D. La. Sept. 22, 1995), in which the Court noted that the Government did not allege that the defendant possessed the weapon at the time of the alleged threat. *Mildon*, 2013 WL 2404080, at *4, 2013 U.S. Dist. Lexis, 77165, at *10-11. Petitioner's indictment alleges that he possessed the weapon within a few days after he transmitted the threatening communications. Furthermore, this Court has noted that a showing of prejudice does not necessarily result in a grant of a motion to sever. *United States v. Magee*, No. 2:13-cr-176-GZS, 2014 WL 5325814, at *14, 2014 U.S. Dist. Lexis 148476 (D. Me. Oct. 20, 2014) (order affirming), 2014 U.S. Dist. Lexis 126246, at *37 (D. Me. Sept. 8, 2014) (recommended decision) (citing *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012)).

403 (1995).[18]  Thus, had the charges been prosecuted separately, the felon-in-possession charge would have been considered relevant conduct for purposes of sentencing on the charges of threatening, and Petitioner would not have been entitled to a downward departure under U.S.S.G. § 5K2.13.

### 3. *Denial of pre-trial bail or compassionate release*

Petitioner argues that trial counsel was ineffective because he did not object to the denial of bail and because he procrastinated before filing a motion for compassionate release for Petitioner to attend his father's funeral.  (Motion, ECF No. 72 at 4.)  Petitioner alleges that counsel's delay resulted in insufficient time to object, on Eighth Amendment grounds, to the denial of the motion.  (*Id.*)  Petitioner also asserts that he was frightened by the Court's denial of the request, and that because he was incarcerated, he was coerced into entering a guilty plea.  (*Id.*)  He specifically alleges that if he had been granted bail or a compassionate release, he would not have pled guilty.  (*Id.* at 5.)

Petitioner presents no evidence upon which one can reasonably question the Court's findings at the plea hearing.  *See Kenney*, 756 F.3d at 45.  Petitioner's grief over the death of his father in February 2011, and his distress about the denial of his motion for compassionate release in March 2011 for the funeral held that month, do not undermine the Court's findings at the plea hearing in April 2011 that when Petitioner pled guilty he was not coerced and that he understood both the charges and the consequences of the plea.  (Plea Tr. at 9-14.)  Furthermore, claims relating to pre-trial bail are not cognizable under section 2255.  *See Lynn v. United States*, 365 F.3d 1225,

---

[18] The sentencing guidelines contain safeguards for avoiding any grossly increased sentences due to duplicative consideration of the same conduct: "Because the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Witte v. United States*, 515 U.S. 389, 405 (1995).  "Significant safeguards built into the Sentencing Guidelines therefore protect petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct." *Id.*

1233 (11th Cir. 2004) (noting that "claims of excessive bail are not cognizable in a section 2255 action") (quotation marks omitted).

### 4. *Conditions of supervised release*

Petitioner objects to the special conditions of his supervised release that require him to participate in mental health treatment, comply with his medical provider's medication program, and not use or possess alcohol.  (Motion, ECF No. 72 at 5; Judgment at 4.)  Petitioner argues that given that there was no psychological evaluation, there is no justification for mental health treatment, and, furthermore, Petitioner does not accept the scientific validity of any treatment that is based on the Diagnostic and Statistical Manual.  (Motion, ECF No. 72 at 6-7.)  He alleges that to the extent he has any temporary mental illness, the illness was induced by being in the prison system.  (*Id.* at 7.)  Petitioner objects to any medication program with which he is required to comply.  (*Id.* at 8.)  He contends that because he is a musician who needs to hear live music in venues that typically are in nightclubs that serve alcohol, the no-alcohol condition is an undue burden for him and counterproductive to his rehabilitation.  (*Id.* at 8-9.)  Finally, he argues that given that the Court found him mentally ill for purposes of the special conditions of release, the Court should also have granted him a downward departure under the sentencing guidelines as a matter of consistency.  (*Id.* at 6.)

The sentencing court "has the authority to impose any condition of supervised release that is reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant."  *United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004).  The First Circuit has held that "the critical test is whether the challenged condition is sufficiently

related to one or more of the permissible goals of supervised release." *Id.* (emphasis and quotation marks omitted). Thus, "the fact that a condition of supervised release is not directly related to [a petitioner's] crime of conviction does not render that condition per se invalid." *Id.* In this case, Petitioner presents no evidence to suggest that the special conditions of his supervised release are not reasonably related to either Petitioner's medical needs, the need to protect the public, or Petitioner's offense, its history and characteristics.

### 5. *Failure to Search Storage Facility*

Petitioner argues that law enforcement's lack of interest in searching a storage unit that Petitioner rented demonstrates that law enforcement acted in bad faith as it shows that law enforcement was not genuinely interested in finding evidence of the threatening communications that Petitioner made. (Motion, ECF No. 72 at 9-10.) Petitioner alleges that the storage space rental document was in his car, and could have led to a search of the storage unit had law enforcement been acting in good faith. (*Id.* at 10.) He contends that based on law enforcement's bad faith, his counsel could have successfully sought the suppression of the shotgun. (*Id.* at 11.) Petitioner argues that appellate counsel was also deficient for failing to raise the issue of bad faith by law enforcement. (*Id.*)

Petitioner's argument is essentially that law enforcement's failure to search his storage unit, like its failure to search the computer storage devices found in his car, is evidence that the warrant search of the car was based on pretext. This argument fails for the reasons discussed above.

### III. CONCLUSION

Based on the foregoing analysis, no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases. The recommendation is that the Court deny Petitioner's

motion for habeas relief under 28 U.S.C. § 2255, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 27th day of February, 2015